IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **FIRST BUSINESS BANK,** | ) |
| **Plaintiff,** | ) Case No. |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| **Grayharp Enterprises LLC, Candace L. Gargagliano, and Jeremiah Gargagliano,** | ) |
| | ) |
| **Defendants.** | ) |

1. Plaintiff First Business Bank (the "Bank"), for its Complaint against Defendants Grayharp Enterprises LLC, a Florida limited liability company ("Grayharp" or "Borrower"), Candace L. Gargaliano, an individual ("Candace"), and Jeremiah Gargagliano ("Jeremiah" together with Candace are collectively, the "Guarantors"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

2. The Bank is organized under the laws of the State of Wisconsin with its main headquarters located at 401 Charmany Drive, Madison, WI 53719.

3. Grayharp is a Florida limited liability company with its main headquarters located at 6333 Nikki Lane, Tampa, Florida 33625. Grayharp has two members: Jeremiah and Candace, both of whom are domiciled in the State of Florida.

4. Jeremiah is an individual domiciled in the State of Florida residing at 6333 Nikki Lane, Tampa, FL 33625.

5. Candace is an individual domiciled in the State of Florida residing at 6333 Nikki Lane, Tampa, FL 33625.

6. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The amount in controversy in this action exceeds $75,000.00, exclusive of interest,

costs, and attorneys' fees, and there is complete diversity of citizenship between the Bank and the Defendants. In addition, there is complete diversity of citizenship between the Plaintiff on the one hand, and the Defendants on the other hand.

7. The Court has personal jurisdiction over the Defendants because Defendants expressly consented to venue in this District pursuant to the terms and conditions set forth in the Loan Agreement (defined below).

8. This Court is the proper venue for this action because the Bank has been damaged in the State of Wisconsin, the Loan Documents (defined below) provided for payments to be made to the Bank in the State of Wisconsin, and the Defendants expressly consented to venue in this District pursuant to the terms and conditions set forth in the Loan Documents.

## FACTUAL BACKGROUND

**A.    The Loan Documents**

9. On or about March 30, 2023, the Borrower executed a U.S. Small Business Administration Note in favor of the Bank, evidencing a loan made by the Bank to the Borrower in the original principal amount of $789,000.00 (the "<u>Note</u>").  A true and correct copy of the Note is attached hereto and marked as **<u>Exhibit 1</u>**.

10. In conjunction with the execution of the Note, the Borrower executed a Loan Agreement in favor of the Bank dated March 30, 2023, signed by the Borrower and by the Guarantors (as amended or otherwise modified from time to time, the "<u>2023 Loan Agreement</u>"). The 2023 Loan Agreement was amended on August 5, 2024 pursuant to that certain Amendment to Account Number 100001975 dated August 5, 2025 (the "<u>Loan Amendment</u>" together with the 2023 Loan Agreement, the "<u>Loan Agreement</u>"), which amended Borrower's obligation to provide financial statements within ninety (90) days after the end of each fiscal year, and amended the

definition of Debt Service Coverage under the 2023 Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto and marked as **Exhibit 2**.

11.     Pursuant to the Loan Agreement, the Guarantors "expressly agree[d] and consent[ed] to all of the terms and conditions set contained herein and further agree[d] to be bound by all the terms and conditions contained herein." *See* Exhibit. 2, p. 15.

12.     To secure repayment of the amounts owing under the Note, Borrower executed a U.S. Small Business Administration Security Agreement dated March 30, 2023 (as amended or otherwise modified from time to time, the "Security Agreement"), granting to the Bank a first priority lien and security interest on all personal property serving as collateral. The described collateral includes all equipment, trade fixtures, inventory, accounts, instrument, chattel paper, general intangibles, documents, deposit accounts, and certain titled motor vehicles, and other such personal property as is more particularly described in Exhibits A and B of the Security Agreement. (collectively, the "Collateral"). The Security Agreement was amended by that certain Amendment to U.S. Small Business Administration Security Agreement Account Number 100001975 dated October 5, 2023 (the "Amendment to Security Agreement") and contains amendments with respect to those certain vehicles described on Exhibit B. A true and correct copy of the Security Agreement as amended is attached hereto and marked as **Exhibit 3**.

13.     The Bank's security interest in the Collateral securing the Note was perfected by that certain UCC-1 Financing Statement filed on March 9, 2023, with the Florida Secretary of State, as filing No. 202300654894, as amended on March 10, 2023, by the filing of that certain amended UCC-1 Financing Statement with the Florida Secretary of State, as Filing No. 202300666724 (as amended or otherwise modified from time to time, the "Financing Statement"). A true and correct copy of the Financing Statement is attached hereto and marked as **Exhibit 4**.

14. The Bank's security interest in the Collateral securing the Note was further perfected by its endorsement as a lienholder to the following vehicle titles: (i) 2007 Frei Van VIN# WDYPE745975157106; (ii) 2016 GMC Terrain VIN# 2GKALMEK9G6336314; and (iii) 2014 Chrysler VIN# 2C4RC1BG0ER1225138.

15. To further secure repayment of the amounts owing under the Note, Candace and Jeremiah both executed U.S. Small Business Administration Unconditional Guarantees dated March 30, 2023, personally and jointly and severally guaranteeing all obligations owed by Borrower to the Bank under the Note (the "Guarantees"). True and correct copies of the Guarantees are attached hereto and marked as **Exhibit 5**.

16. On August 5, 2025 the Defendants executed that certain Deferred Payment Agreement dated August 5, 2025 (the "Deferred Payment Agreement"). Under the Deferred Payment Agreement, Defendants were permitted to make interest only payments under the Note between August 2024 and January 2025, with principal and interest payments re-commencing on February 5, 2025. In addition, pursuant to the Deferred Payment Agreement, the Defendants released and discharged the Bank from "any and all actions and causes of action, suits, debts, claims, demands, liabilities, obligations, damages, and expenses . . . existing or accruing as of the date of execution hereof, for or allowed by [the Bank] prior to and directly or indirectly arising out of or in any way connected with the obligations of [Defendants] to [the Bank]." A true and correct copy of the Deferred Payment Agreement is attached as **Exhibit 6.**

17. The Note, Loan Agreement, Security Agreement, Guarantees, and Deferred Payment Agreement are hereinafter referred to as the "Loan Documents".

18. Pursuant to the terms of the Loan Documents, the Borrower was required to make consecutive monthly payments of principal and interest in the amount of $10,697.11, on the fifth of every month. Exhibit 1, Paragraph 3.

19. Failure to pay any amount due under the Loan Documents is considered an event of default. Exhibit 2, Article V, (a).

20. Additionally, an event of default occurs if Borrower discontinues business. *Id.* at Article V, (c)(7).

21. Upon the occurrence of any event of default, the Bank may, among other things, declare "the entire unpaid balance of the Note to be forthwith due and payable, and thereupon such balance shall become so due and payable without presentment, protest, or further demand or notice of any kind, all of which are hereby expressly waived[.]" *Id.* at Section 6.1. Borrowers "shall reimburse" the Bank for all "costs and expense, including, without limitation, reasonable counsel fees and expenses." *Id.* at Section 8.8.

22. The Guarantees obligated the Guarantors to "unconditionally guarantee[] payment" to the Bank "of all amounts owing under the Note." Exhibit 6, Paragraph 1. The Bank is not required to seek payment from any other source before demanding payment from the Guarantors. *Id.*

23. The Guarantees obligated the Guarantors to "pay all expenses [the Bank] incurs to enforce t[e] Guarantee[s], including, but not limited to, attorney's fees and costs." *Id.* at Section 9(A).

**B.   Events of Default**

24. On March 4, 2025, the Bank sent the Defendants a Notice of Default and Reservation of Rights (the "Default Notice"), notifying Defendants that they were in default under the Loan Document for failing to make required payments and preserving all rights and remedies

under the Loan Documents. A true and correct copy of the Default Notice is attached hereto and marked as **Exhibit 7**.

25. On July 10, 2025, counsel for the Bank sent the Defendants a Notice of Default, Acceleration Notice and Demand for Payment (the "Demand Notice"), notifying Defendants that their failure to make required payments under the Loan Documents constitutes a continuing event of default and that all indebtedness under the Note was now accelerated and immediately due and owing. A true and correct copy of the Demand Notice is attached hereto and marked as **Exhibit 8**.

26. Upon information and belief, Borrower has ceased business operation, which constitutes an independent event of default under the Loan Documents. Exhibit 2, Article V, (c)(7).

27. Defendants voluntarily sold collateral and submitted payments to the Bank of $144,000.00 on July 24, 2025, $45,000.00 on August 13, 2025, and $28,500.00 on September 24, 2025.

28. For avoidance of doubt, the Bank again exercised its non-exclusive right to accelerate under the Loan Documents subsequent to the receipt of those payments.

29. As of October 2, 2025, the Defendants were indebted to the Bank in the following amounts: $509,616.59 in principal, $32,764.98 in accrued interest, and $4,418.16 in fees and expenses, for a total of $546,799.72 plus interest accruing thereafter at the per diem default rate of $136.92, plus late charges, fees, costs, and attorneys' fees (collectively, the "Indebtedness").

## COUNT I
## BREACH OF NOTE – BORROWER

30. The Bank incorporates the preceding paragraphs above as though fully set forth herein.

31. The Loan Documents, including the Note, were duly authorized, executed, and delivered by Borrower, and are legal and binding obligations of Borrower, and are enforceable against Borrower in accordance with their respective terms.

32. Borrower is in default under the terms and conditions of the Note as more particularly described above.

33. Borrower's payment and performance obligations under the Loan Documents, including payment of the Note, are absolutely and unconditionally due and payable in full, and there exists no right of setoff or recoupment, nor any counterclaims or defenses of any nature whatsoever, to the full payment of the obligations or the exercise and enforcement of the Bank's rights under the Loan Documents.

34. The Bank has given all required notices under the Loan Documents to Borrower.

35. Borrower has failed to perform the obligations in the Loan Documents as identified herein.

36. All conditions precedent to Borrower's obligations pursuant to the Loan Documents have occurred and the Bank has complied with the terms of the Loan Documents.

37. Borrower's defaults pursuant to the Note and other Loan Documents have caused the Bank damages in the amounts identified above, and the Bank is entitled to the remedies requested herein.

38. As of October 2, 2025, the Borrower was indebted to the Bank in the following amounts: $509,616.59 in principal, $32,764.98 in accrued interest, and $4,418.16 in fees and expenses, for a total of $546,799.72 plus interest accruing thereafter at the per diem default rate of $136.92, plus late charges, fees, costs, and attorneys' fees.

39. As a result, the Borrower is jointly and severally liable to the Bank for the Indebtedness, plus attorneys' fees and costs of suit incurred herein in an amount according to proof.

## COUNT II
## BREACH OF GUARANTEES – GUARANTORS

40. The Bank hereby incorporates the preceding paragraphs above as though fully set forth herein.

41. Pursuant to the Default Notice and the Demand Notice, the entire Indebtedness is due and owing from Borrower to the Bank.

42. The Bank relied on the Guarantees in advancing the sums set forth in the Loan Documents to Borrower and accordingly, the Bank has satisfied all conditions precedent.

43. The Bank has incurred and will continue to incur attorneys' fees and collection costs in the collection of the Indebtedness and enforcement of the Bank's rights and remedies under the Loan Documents, including the Guarantees.

44. As of September 30, 2025, Guarantors are indebted under the Guarantees in the amount of the Indebtedness.

45. Guarantors have failed, refused, or otherwise neglected to pay the Indebtedness due under the Guarantees.

46. As a direct and proximate result of Guarantors' failure to repay the amounts due under the Guarantees, the Bank has been damaged in the amount equal to the Indebtedness.

47. Pursuant to the terms of the Guarantees, the Bank is also entitled to recover its attorneys' fees and costs of suit incurred herein in an amount according to proof.

48. As of October 2, 2025, the Guarantors were indebted to the Bank in the following amounts: $509,616.59 in principal, $32,764.98 in accrued interest, and $4,418.16 in fees and

expenses, for a total of $546,799.72 plus interest accruing thereafter at the per diem default rate of $136.92, plus late charges, fees, costs, and attorneys' fees.

49. As a result, the Guarantors are jointly and severally liable to the Bank for the Indebtedness, plus attorneys' fees and costs of suit incurred herein in an amount according to proof.

## COUNT III
## ALTERNATIVE COUNT– UNJUST ENRICHMENT
### (as to Borrower)

50. The Bank hereby incorporates the preceding paragraphs above as though fully set forth herein.

51. The Bank advanced certain amounts as loans, as evidenced by the Loan Documents, which Borrower accepted and acknowledge as debt obligations due and owing to the Bank.

52. Despite Borrower's promise to repay the Indebtedness, Borrower has failed to repay the Indebtedness to the Bank.

53. The Bank has demanded payment from the Borrower under the Loan Documents, but Borrower has failed and refused to make the required payments.

54. As of October 2, 2025, the Defendants were indebted to the Bank in the following amounts: $509,616.59 in principal, $32,764.98 in accrued interest, and $4,418.16 in fees and expenses, for a total of $546,799.72 plus interest accruing thereafter at the per diem default rate of $136.92, plus late charges, fees, costs, and attorneys' fees

55. As a result, the Borrower is jointly and severally liable to the Bank for the Indebtedness, plus attorneys' fees and costs of suit incurred herein in an amount according to proof.

## COUNT IV
## ALTERNATIVE COUNT– UNJUST ENRICHMENT
### (as to Guarantors)

56. The Bank hereby incorporates the preceding paragraphs above as though fully set forth herein.

57. The Bank advanced certain amounts as loans, as evidenced by the Loan Documents, which the Guarantors personally guaranteed repayment to the Bank and accepted and acknowledged as debt obligations due and owing to the Bank.

58. Despite the Guarantors' promise to repay the Indebtedness, the Guarantors have failed to repay the Indebtedness to the Bank.

59. The Bank has demanded payment from the Guarantors pursuant to the Loan Documents, but the Guarantors have failed and refused to make the required payments.

60. As of October 2, 2025, the Guarantors were indebted to the Bank in the following amounts: $509,616.59 in principal, $32,764.98 in accrued interest, and $4,418.16 in fees and expenses, for a total of $546,799.72 plus interest accruing thereafter at the per diem default rate of $136.92, plus late charges, fees, costs, and attorneys' fees

61. As a result, the Guarantors are jointly and severally liable to the Bank for the Indebtedness, plus attorneys' fees and costs of suit incurred herein in an amount according to proof.

WHEREFORE, the Bank requests judgment to be entered against the Defendants, jointly and severally, in the sum of $546,799.72, plus interest from and after October 2, 2025, at the per diem default rate of interest of $136.92 and other damages arising and sums due and owing pursuant to the Loan Documents; and for the costs of this action, including attorneys' fees as allowed by law, plus post judgment interest and such other and further relief as is just.

Dated: October 3, 2025

Respectfully Submitted,

STINSON LLP

By: <u>*/s/ Terri A. Running*</u>
Benjamin J. Court (WI #1088634)
Terri A. Running (MN #0238338)
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
benjamin.court@stinson.com
terri.running@stinson.com

***ATTORNEYS FOR***
***FIRST BUSINESS BANK***